Joseph BROWN, Plaintiff-Appellant,

v.

SEABOARD AIRLINE RAILROAD COM-
PANY, Defendant-Appellee.

No. 29236.

United States Court of Appeals,
Fifth Circuit.

Nov. 24, 1970.

I. W. Williams, St. Petersburg, Fla.,
for plaintiff-appellant.

George Winn, Ronald D. McCall, James E. Thompson, of Fowler, White, Gillen, Humkey & Kinney, P. A., Tampa, Fla., for defendant-appellee.

Before BELL, THORNBERRY, and CLARK, Circuit Judges.

BELL, Circuit Judge:

The district court directed a verdict in favor of the defendant in a suit for personal injuries brought by plaintiff against the defendant railroad company based on alleged negligence. The principal issue presented is whether the evidence was sufficient to make a jury question. There are two additional issues: one, did the court err in refusing to classify as a hostile witness a railroad employee called as a witness by plaintiff; two, did the court err in excluding evidence that the train in question formerly had a four-man crew as compared with the three-man crew at the time of the accident. Finding no error, we affirm.

After a careful study of the record in light of the issues presented, the following is an adequate distillation of the case. Late in the afternoon of March 18, 1966, defendant's train crew discovered plaintiff lying near its track with both legs virtually amputated. They were later amputated at the hospital. The train crew had been switching freight cars in and out of the Tropicana plant near Bradenton, Florida. The evidence indicated without dispute that certain freight cars of the defendant railroad ran over plaintiff's legs at a point on the left rail facing north of a spur or industrial track near the Tropicana plant. This track, called a runaround track, was parallel to and near the main line track and it was also near a spur track which led into the Tropicana plant. It was also undisputed that defendant's crew moved a cut of eight cars three car lengths in a southern direction on the track in question as part of a switching operation. It was during this movement that the plaintiff was injured. The engine headed north to make connection with these cars. After moving all eight cars the distance of three car lengths as stated, the three southern most cars were removed from the cut of eight and switched into the Tropicana plant. Plaintiff was discovered by the crew after the switching operation had been finished and when the switch engine was heading north on the mainline.

Defendant's brakeman testified that he was riding on the front or head of the engine as distinguished from being in the cab at the time the engine made connection with the cut of eight cars and that he could see to the left and right of the cars. He testified that he did not see anyone in the vicinity at the time although he looked carefully. There was no evidence to the contrary. Plaintiff did not testify.

I.

 The motion for directed verdict was premised on the ground that plaintiff was a trespasser and that under Florida law defendant's only duty to a trespasser was to refrain from wanton negligence or willful misconduct toward him. Louisville & Nashville Railroad Company v. Holland, Fla., 1959, 79 So.2d 691; Adams v. Florida East Coast Ry. Co., Fla.App., 1965, 179 So.2d 374. The difficulty with this position is factual. A trespasser upon railroad property becomes an implied licensee if the property is open to use and is used by the general public and the railroad knows, or should know, of that use and makes no effort to limit it. If plaintiff occupied the status of an implied licensee, then the railroad was under a duty to exercise ordinary care to discover his presence if his presence was reasonably foreseeable. Seaboard Air Line Railroad Company v. Branham, Fla.App., 1958, 99 So.2d 621.

 The track on which plaintiff was injured is near Bradenton, Florida in a populated area with a good many residences located in the near environs. The Tropicana plant covers a four block area immediately to the north and east of the point of injury. The immediate area to the west is a wooded and somewhat swampy area. The point of injury was

some 1,600 feet from the nearest railroad street crossing. There was testimony that people had been seen on occasion walking along the track near the point of injury en route to the wooded area to pick oranges or bananas and perhaps to dig fish bait. This evidence, although thin, was sufficient to make a jury question on the issue whether plaintiff was a trespasser or an implied licensee. On the trespasser status vis a vis that of licensee being a jury question where the facts are in dispute, see Mixon v. Atlantic Coast Line Railroad Company, 5 Cir., 1966, 370 F.2d 852. With the trespasser underpinning removed, one basis for directing the verdict is also removed.

## II.

As an additional ground for the motion for directed verdict, it was urged that there was no evidence whatever of negligence on the part of defendant. Plaintiff's counsel attempted to make out a case of negligence by contending that the three crewmen (engineer, conductor, and brakeman) were all on the right hand side of the engine and that this impaired their ability to see to the left side of the cut of cars. This contention is without support in the record. The evidence was that plaintiff was run over by the left side, facing north, of the rear cars in the cut at the time they were pulled south by three cars lengths. The brakeman was on the front or head of the engine and could see to the right and left of the cut of cars although he was on the right hand side of the front of the engine so that the engineer might see his hand signals. As stated, he testified that he looked to the right and left as the engine approached the cars but saw no one.

■ Plaintiff's other theory by which he hoped to prove negligence was that the train crew formerly consisted of one additional employee, a fireman. His theory was that the fireman would have been on the left side of the cab and could have seen plaintiff. The district court ruled that testimony as to this former practice of a four-man crew was inadmissible. We agree. It was offered as proof of a custom having to do with safety. Plaintiff was allowed to prove that there was no employee sitting in the cab on the left side. There was no offer to show that it was inconsistent with safe railroad operation under the circumstances not to have a fireman in the cab or some other employee sitting on the left side. The proof was to the contrary, that the brakeman was riding on the front or head of the engine so as to keep a lookout during the switching operation.

■ Plaintiff's last hope and really the only evidence which might make a fact question for the jury on negligence is a statement of history given by plaintiff to a treating physician four days after the injuries were sustained. The doctor stated that the notes as to the history were given to him in the presence of an intern, taken down by the intern and typed 18 days later. The portion of the history which is important on the question presented is that plaintiff told the doctor that he was walking beside the train and that a projection from the train struck him and caused him to fall under the train. The doctor stated that this information was not necessary for the treatment of plaintiff.

The district court admitted this history and this is the only fact which would make a jury issue on negligence under the test of Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365, 375, that "* * * There must be a conflict in substantial evidence to create a jury question. * * *" Defendant objected to the admission of this evidence and we conclude that the objection was well taken. It was not offered nor is there any contention now that it was a res gestae exception to the hearsay rule. Although hearsay it was apparently admitted under the exception to the hearsay rule which provides for the admission of a patient's history of illness or injury as related to a physician and which is necessary in the treatment of the patient. As noted, the doctor here testified that this

particular history, how plaintiff got under the train, was not necessary for the purpose of treatment. This testimony as to causation did not relate to a condition or symptom for which treatment was sought and it was therefore not admissible as an exception to the hearsay rule. Hartford Accident & Indemnity Co. v. Carter, 5 Cir., 1940, 110 F.2d 355, 356. See also Walker v. West Coast Fast Freight Inc., 9 Cir., 1956, 233 F.2d 939, 942; Walker v. Prudential Insurance Company of America, 5 Cir., 1942, 127 F.2d 938, 940; Aetna Life Ins. Co. v. Quinley, 8 Cir., 1937, 87 F.2d 732, 733, 734; Wilkinson v. Grover, Fla.App., 1965, 181 So.2d 591.

It is true of course, that plaintiff could have made a case for the jury by testifying himself as to the same fact related by the doctor. It was and is plaintiff's counsel's theory that plaintiff was, at best, slow mentally at the time he was injured and that his mind has deteriorated since then. A psychiatrist and a psychologist were offered on this proposition. The psychiatrist ended his testimony by saying that he knew of no reason why plaintiff could not testify and the burden of the testimony of the psychologist was that plaintiff might have suffered some amnesia as to some pre-accident events due to the trauma involved but there was no testimony that he had lost his memory with respect to the facts of the accident. Moreover, such a contention would be inconsistent with the history, supra, which was related to the doctor four days after the accident. In short, we must take the case as it comes to us and the sum is that plaintiff did not testify and there was no admissible evidence of negligence to make a question for the jury on negligence.

### III.

The last assignment of error has to do with the failure of the district court to declare the brakeman, called as a witness by plaintiff, a hostile witness.

* Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of

Plaintiff sought to call the brakeman as a hostile witness under Rule 43(b), F.R. Civ.P. so that he could ask him leading questions. The court stated that there had been no showing of hostility. Plaintiff called the brakeman anyway and on several occasions during his testimony attempted to have him declared a hostile witness. We have carefully examined the testimony and have concluded that the district court did not err in declining to classify this witness as hostile. See Rossano v. Blue Plate Foods, Inc., 5 Cir., 1963, 314 F.2d 174, on the hostile witness provision of Rule 43(b).

Affirmed.